[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14194
Non-Argument Calendar

_____

D. C. Docket No. 06-00037-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HECTOR CANTU,
a.k.a. Hector Cantu-Montalvo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(April 4, 2007)**

Before ANDERSON, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Hector Cantu ("Hector") appeals his conviction for illegal re-entry into the

United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, Hector argues that he was seized in violation of the Fourth Amendment. He argues that the arresting officer, John Cason ("Cason"), had no reasonable, individualized suspicion that Hector was engaged in criminal activity when Cason requested identification from Cantu, who was a passenger in a commercial truck being driven by his brother, Arnaldo Cantu ("Arnaldo").

**Background**

Hector Cantu was arrested after Loxely Alabama police officer Cason stopped the commercial truck, in which he was a passenger, on Interstate 10 for swerving over the white fog line. When Cason stopped the truck, the driver, Arnaldo, met him outside the truck. Cason requested Arnaldo's driver's license, insurance information, logbook, cargo documentation, and the passenger's driver's license. Arnaldo provided all the information except the passenger's identification. Cason then peered into the cargo hold, and radio Arnaldo's information into his dispatcher. After inspecting Arnaldo's paperwork, Cason testified that he became suspicious because of "down time" in Atlanta, a known destination city for the narcotic trade. However, there was no problem with the logbook or Arnaldo's driver's license, insurance, or Arnaldo's ability to drive.

Cason was aware of a federal regulation that prevented commercial vehicles

from carrying unauthorized riders. Cason also was aware that he had no authority to take action on violations of these federal regulations. Cason requested Arnaldo's written authorization by the motor carrier allowing the passenger. Arnaldo admitted that he had no such authorization, and Cason went to the vehicle to question Hector. He asked Hector for identification and where he was employed. Hector had no state issue identification, and offered only a Sam's Club Card. Cason found this suspicious, and ran the identification information Hector had provided orally through local dispatch. After further questioning Arnaldo, Cason contacted a Bureau of Immigration and Customs Enforcement dispatcher and requested information on both Hector and Arnaldo. He learned that Hector was in the country illegally. At this point, the traffic stop had lasted about 27 minutes.

After a contested evidentiary hearing, Hector Cantu entered a conditional guilty plea, reserving the right to appeal the district court's denial of his motion to suppress. The district court sentenced Cantu to 41 months in prison to be followed by three-years of supervised release if he is not deported.

## Standard of Review

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999).

3

We review the district court's factual findings for clear error and review the district court's application of the law to those facts *de novo*. *Id.* These factual findings include the district court's credibility determinations, which are conclusive "unless the judge credits *exceedingly* improbably testimony." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (emphasis in original)(quoting United States v. Cardona-Rivera, 904 F.2d 1149, 1152 (7th Cir.1990)). "[W]hen considering a ruling on a motion to suppress, all facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

**Discussion**

Hector Cantu argues that Cason seized him in violation of the Fourth Amendment because there was no reasonable suspicion that he was engaged in criminal activity. The Fourth Amendment's protections against unreasonable search and seizure "extend to brief investigatory stops of persons or vehicles." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002). For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a reasonable suspicion that criminal activity "may be afoot." *Id.* (citations omitted) When determining whether reasonable suspicion exists, we consider the totality of the circumstances to determine whether the police officer

had a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* at 273. "The individual challenging the search has the burdens of proof and persuasion." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

Cason's investigation of the traffic stop must be "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003)(quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968)). A traffic stop must be of "limited duration" and "may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *Id.* (citation omitted). However, once effectuating a legal stop, an officer has "the duty to investigate suspicious circumstances that then [come] to his attention." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) (citation omitted). The officer can lawfully ask questions, even questions not strictly related to the traffic stop, while waiting for a computer check of registration or examining a driver's license so long as it does not "prolong[] beyond the time reasonably required to complete that mission." *Illinois v. Caballes,* 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005). Furthermore, an officer can lengthen the detention if he has reasonable suspicion of illegal activity other than the traffic violation, or if the detention has become a consensual encounter. *United States v.*

*Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).

Cason observed a traffic violation, for which he could legitimately stop the van. The van crossed the white line, and Cason had the duty to further investigate whether the driver was impaired. Thus, Cason was justified in stopping the vehicle, and examining the log book to determine how long the driver had been driving. Furthermore, Cason testified that it was unusual for professional drivers to have unauthorized passengers, and he knew that there was a federal regulation prohibiting such passengers. Since Cason had a duty to investigate suspicious circumstances that come to his attention after the initial stop and was permitted to rely on his experience, he did not act unreasonably in questioning the Cantus about Hector's identity and his authorization to be in the truck. Cason then ran standard dispatch checks of both Cantus' identities. The entire encounter lasted approximately 27 minutes before Cason learned of Hector's status as a person illegally inside the United States. Cason did not prolong the encounter beyond what it took to investigate the traffic stop, and asking questions about other suspicious circumstances that he observed during the traffic stop did not violate the Fourth Amendment.

Upon review of the record and consideration of the parties briefs, we find no error in the district court's denial of Hector Cantu's motion to suppress.

Accordingly, we affirm Cantu's conviction.

**AFFIRMED.**